**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **FELIPE DOMINGUEZ FERNANDEZ** | **CIVIL ACTION** |
| **VERSUS** | **NO. 26-375-SDD-RLB** |
| **BRIAN ACUNA, et al.** | |

---

**RULING AND ORDER**

Petitioner, Felipe Dominguez Fernandez (Dominguez Fernandez), is a 68-year-old citizen of Cuba. He is disabled, illiterate, and currently being held by U.S. Immigration and Customs Enforcement (ICE) at Angola—the country's largest maximum-security prison and the site of a former slave plantation. He has been in ICE detention since October 24, 2025. In April of 2026, the Court received his Petition for Writ of Habeas Corpus (Doc. 1), challenging his detention as unlawful, pursuant to 28 U.S.C. § 2241. Following a recent hospitalization for "chest pain and an abnormal electrocardiogram," Dominguez Fernandez moved for expedited consideration of his Petition (Doc. 28 at 1).

Given Dominguez Fernandez's age (68 years old) and the deterioration of his health while unlawfully detained by ICE, his Motion to Expedite (Doc. 28) the Court's consideration of his habeas Petition is **GRANTED**.

These facts are materially indistinguishable from this Court's prior decisions in *Rodriguez Romero v. Ladwig*, No. 25-cv-1106-JWD (M.D. La. 2026), *Omar v. U.S. ICE*, No. 26-cv-443-BAJ (M.D. La. 2026), and *Tase v. Jordan*, No. 26-cv-246-SDD (M.D. La. 2026), all of which involved the unconstitutional revocation of supervised release and prolonged detention without any legitimate purpose. The Court, therefore, **GRANTS** the Petition for Writ of Habeas Corpus, as follows.

### A. Background

Dominguez Fernandez was born in Cuba, immigrated to the United States in 1980, and later became a lawful permanent resident (LPR). (Doc. 25-1 at 9). Now 68 years old, he has lived in this Country for 46 years. He has diabetes, anxiety, and cardiac distress, requiring daily medications. (Doc. 27-2). And as a child, he suffered a traumatic brain injury. Dominguez Fernandez never learned to read or write and, to this day, suffers from memory loss.

Following a 2007 criminal conviction, was initially detained by ICE on January 14, 2009, stripped of his LPR status, and placed in removal proceedings. In February of 2009, an Immigration Judge ordered that he be removed to his native Cuba. (Doc. 25-1 at 7). Unable to effectuate his removal to Cuba due to diplomatic barriers, Dominguez Fernandez was released on an Order of Supervision (OSUP) on May 17, 2009. (Doc. 25-2 at 159).

ICE re-detained him on April 15, 2019, after nominating Dominguez Fernandez 'as a Mariel Cuban'[1] for removal to Cuba. However, the Government of Cuba "denied [his] case for removal" on July 3, 2019, and ICE again released Dominguez Fernandez on July 12, 2019, expressly finding his removal was not reasonably foreseeable. (Doc. 25-1 at 191, 202, 204).

Dominguez Fernandez was living free and peacefully in the United States on supervised release when ICE suddenly revoked his OSUP and re-detained him on October 24, 2025. (Doc. 1, ¶¶ 30, 35, 36). The Notice of Revocation that ICE untimely served on October 26, 2025, generically stated, without explanation:

> This letter is to inform you that your case has been reviewed and it has been determined that you will be kept in the custody of [ICE] at this time. . . . ICE has

---

[1] Fernandez Dominguez "is one of the nearly 125,000 undocumented Cuban nationals who arrived in the United States in 1980 from their native land in a series of boatlifts over several months, which boatlifts originated from the Cuban port of Mariel." *Fernandez-Fajardo v. I.N.S.*, 193 F. Supp. 2d 877, 879 (M.D. La. 2001) (describing "Mariel boatlifts of 1980").

> determined that there is a significant likelihood of removal in the reasonably foreseeable future in your case."

(Doc. 25-1 at 11). Yet nearly a year later, Dominguez Fernandez remains deprived of his liberty in the custody of ICE. There is no end in sight.

During his current detention, on January 29, 2026, Mr. Dominguez Fernandez received a Notice of Removal informing him that ICE "intend[ed] to remove" him to a third country—Mexico. (Doc. 25-1 at 18). Almost three months later, in April of 2026, ICE placed Mr. Dominguez Fernandez on a bus, along with other detained noncitizens. ICE agents drove them to the Mexican border:

> Once we arrived at the border, the officer on the bus asked if anyone wanted to get off the bus and go to Mexico. Several individuals got off the bus. . . . An officer asked if I was staying or leaving, and I told him that I was Cuban and did not want to go to Mexico. I stayed waiting on the bus for a couple of hours. . . . Shortly before we left the border, the guards brought back one of the individuals who had gotten off the bus. That person told me that Mexico had rejected him because he was sick and he needed medications.

(Doc. 27-2 at 3-4). Despite its inability to effectuate his removal, ICE took Mr. Dominguez Fernandez back to detention at Angola. On July 16, 2026—after "experiencing intermittent chest pain" for several months in custody—he was rushed to Lane Regional Medical Center following a cardiac episode and abnormal EKG. (Doc. 28-1 at 1). Dominguez Fernandez was hospitalized overnight. ICE returned him to Angola the following day. Dominguez Fernandez remains in ICE detention. (Doc. 28-1 at 1-2).

**B. Discussion**

Dominguez Fernandez argues his detention was unlawful at its inception due to a lack of changed circumstances,[2] and it remains unlawful today, in violation of both the Immigration and

---

[2] He additionally claims that ICE failed to comply with the procedural requirements of 8 C.F.R. § 241.13(i), depriving him of liberty without due process. The Court does not address this procedural due process claim as it finds habeas relief is warranted based on Dominguez Fernandez's substantive due process claims.

Nationality Act (INA), and the Substantive Due Process Clause of the Fifth Amendment to the United States Constitution.[3] For the reasons given below, the Court agrees.

**(i) Unlawful Re-Detention Absent Changed Circumstances**

Because noncitizens have an "overwhelming liberty interest in their continued release," on an Order of Supervision, "courts have overwhelmingly ruled that the revocation regulations . . . are intended to protect [that] fundamental right derived from the constitution." *Rodriguez Romero v. Ladwig*, 827 F. Supp. 3d 779, 798 (M.D. La. 2026). "Should ICE disregard its own procedures when revoking a noncitizen's release, a person's liberty is taken from them without due process. Thus, the Fifth Amendment to the United States Constitution is violated and the profound remedy of habeas corpus is warranted." *Omar v. U.S. ICE*, No. 26-cv-443, 2026 WL 1663009, at *5 (M.D. La. May 29, 2026).

Relevant here, section 1231(a)(3) of the INA, and its implementing regulation, 8 C.F.R. § 241.13(a),[4] provide that an OSUP may be revoked if the conditions of release are violated, or if changed circumstances now exist making it significantly likely that removal will occur in the reasonably foreseeable future (SLRRFF).

In its Response, the Government confirms that Dominguez Fernandez's OSUP was revoked to effectuate his removal from the United States. (Doc. 26 at 3). The relevant part of the regulation therefore provides:

> "[T]he Service may revoke" a noncitizen's OSUP and "return [them] to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."

---

[3] This Court previously explained the applicable law in a detailed opinion, *Rodriguez Romero v. Ladwig*, 827 F. Supp. 3d 779 (M.D. La. 2026), which is incorporated here by reference.

[4] "Section 1231(a)(3) and it's implementing regulations govern Petitioner's detention. Specifically, 8 C.F.R. § 241.13 governs Petitioner's detention because Petitioner was re-detained after being released on an order of supervision and challenges the likelihood that he will be deported within a reasonable period of time." *Gomes-Afonseca v. Lyons*, No. 26-10215, 2026 WL 538167, at *3 (D. Mass. Feb. 26, 2026).

8 C.F.R. § 241.13(i)(2).

Critically, the "changed circumstances that make a noncitizen's removal likely in the foreseeable future must have existed at or before the OSUP revocation; post-hoc justifications are inadequate." *Omar*, 2026 WL 1663009, at *7. Thus, "[b]efore revoking an OSUP," ICE must determine that removal "has become significantly likely" and "ICE must make that determination in the first instance, rather than the Court." *Munagi v. McDonald*, 813 F. Supp. 3d 225, 228 (D. Mass. 2025). This requires an individualized assessment—not vague statements and generalizations. *See Rodriguez Romero*, 827 F. Supp. 3d at 792; *Roble v. Bondi*, 803 F. Supp. 3d 766, 771–72 (D. Minn. 2025) (rejecting Government's alleged change in circumstances as proffered change was "not individualized to Roble; in fact, it applies to any noncitizen [re-]detained under 8 C.F.R. § 241.13(i)(2)"). And contrary to the Government's position (Doc. 26 at 6), it is ICE who bears the burden of showing changed circumstances—not the noncitizen. *See Rodriguez Romero*, 827 F. Supp. 3d at 792.[5]

Despite Mr. Dominguez Fernandez's liberty interest in his continued release, ICE re-detained him on October 24, 2025 without any concrete plan to effectuate his removal — i.e., absent changed circumstances. The Notice of Revocation provides no explanation for his re-detention, much less any information specific to Mr. Dominguez Fernandez on which ICE could have determined his removal had become imminent. *See Rombot v. Souza*, 296 F. Supp. 3d 383, 387 (D. Mass. 2017) (ordering petitioner's release where requisite findings were not made before

[5] While Dominguez Fernandez has the ultimate burden of proving his entitlement to habeas relief, *see Walker v. Johnston*, 312 U.S. 275, 286 (1941), the applicable regulations "place the burden on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future," *Roble v. Bondi*, 803 F. Supp. 3d 766, 772 (D. Minn. 2025) (citing 8 C.F.R. § 241.4 and § 241.13); *see also Hernandez Escalante v. Noem*, No. 25-cv-182, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025) ("[T]his is not your typical first round detainment of an alien awaiting removal. Petitioner was previously detained, then released on supervis[ion] . . . . The regulations clearly indicate, upon revocation of supervised release, it is [ICE's] burden to show a significant likelihood that the [noncitizen] may be removed.").

noncitizen's OSUP revocation and re-detention); *Abuelhawa v. Noem*, 811 F. Supp. 3d 847, 859–61, 863–64 (S.D. Tex. 2025) (ordering immediate release of petitioner where the notice provided lacked specific changed circumstances).

This lack of specificity is especially problematic considering Cuba had already denied a request to repatriate Dominguez Fernandez in July of 2019. (Doc. 25-1 at 191, 202, 204). And the Government does not suggest any intervening change in diplomatic relations with Cuba or otherwise point to any efforts made by ICE between July of 2019 and October of 2025 to further his removal.

Instead, the Government confirms it was only *after* his re-detention last fall that ICE learned Cuba had once again "denied a request to repatriate [Dominguez Fernandez]." (Doc. 26 at 4). And Dominguez Fernandez was months into his current detention before ICE even identified Mexico as a possible third country for removal in early 2026. But another denial from Cuba, and ICE's abstract dream of Mexico in the future, "simply do not constitute changed circumstances of any kind, let alone changed circumstances that [made] removal significantly likely" as of October 24, 2025. *Omar v. U.S Immigr. & Customs Enf't*, No. 26-cv-443, 2026 WL 1663009, at *7 (M.D. La. May 29, 2026). To be clear, neither makes removal more likely and neither occurred at or before re-detention. But perhaps the absence of changed circumstances is best highlighted by the fact that Dominguez Fernandez remains in detention to this day.

The record establishes that ICE re-detained Dominguez Fernandez without any concrete plan to effectuate his removal. Therefore, at its inception, his re-detention was unmoored from any legitimate purpose, and unconstitutionally deprived him of liberty in violation of the Substantive Due Process Clause of the Fifth Amendment.[6] This alone warrants habeas relief.

---

[6] Civil detention is only constitutional if it serves a "legitimate nonpunitive governmental objective." *Kansas v. Hendricks*, 521 U.S. 346, 363 (1997). Given the regulatory framework prescribing when and how an OSUP may be

Beyond that, the Government cannot show that Mr. Dominguez Fernandez's removal is foreseeable even now—nearly a year into his re-detention. Because Respondents also cannot justify Mr. Dominguez Fernandez's prolonged detention, he is entitled to habeas relief for this additional reason.

**(ii) Unconstitutionally Prolonged Detention**

The Government continues to detain Mr. Dominguez Fernandez in ostensibly civil immigration detention based on some abstract possibility of removal in the future. They have no viable country for removal and no timeframe.

The Government confirms that Cuba, the only country to which Mr. Dominguez Fernandez has citizenship or any claim to status, has twice denied requests to repatriate him — in 2019 and 2026. (Doc. 26 at 3, 4); (Doc. 25-1 at 191) (Cuba "denied this case for removal" on July 3, 2019). Indeed, "Cuba has historically refused to accept back its removable nationals."[7] And, as one court recently acknowledged, "U.S.–Cuba relations, historically poor, have deteriorated even further" under the current regime and "repatriation negotiations between the two governments have stalled." *Mendoza Martinez v. Parra*, 2026 WL 2318024, at *5 (S.D. Fla. Aug. 11, 2026). Therefore, removal to Cuba is unlikely in the foreseeable future, if not impossible. *See, e.g.*, *Sanchez v. Bondi*, No. 25-2573, 2026 WL 160882, at *3 (W.D. Wash. Jan. 21, 2026) (Cuba rarely repatriates its citizens, especially those with criminal records).

The only third country identified by the Government since October 2025 is Mexico. However, the record is devoid of any evidence showing Dominguez Fernandez can be removed to

---

rescinded, re-detention is only justified—and, therefore, constitutional—if there has been a change in circumstances such that removal is now imminent. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Detaining a noncitizen to effectuate any other goal is without statutory basis and thus arbitrary and unconstitutional. *Jackson v. Indiana*, 406 U.S. 715, 737 (1972).

[7] Presidential Proclamation 10949, 90 Fed. Reg. 24497, 2025 WL 1626552 (June 4, 2025).

Mexico in the foreseeable future, if ever. Mexico has never expressed a willingness to accept him for removal.[8] In fact, the Government's Response suggests Mexico has yet to even *consider* him as a candidate for removal. (Doc. 26 at 5) ("no reason to believe the Mexican authorities would reject him").

What's more, having medical conditions requiring consistent treatment—like Dominguez Fernandez—often results in a noncitizen's rejection by Mexico. *See, e.g.*, (Doc. 27-2 at 4) (Describing a fellow detainee who voluntarily crossed the border in April, Dominguez Fernandez recalls: "Mexico had rejected him because he was sick and he needed medications."); *Sanchez v. Bondi*, No. 25-2573, 2026 WL 160882, at *3 (W.D. Wash. Jan. 21, 2026) ("Moreover, Officer Dumo indicates that Petitioner's diagnosis with a serious mental disorder precludes his removal to Mexico.").

And even if Mexico had agreed to accept Mr. Dominguez Fernandez on paper (they have not), it will only accept willing immigrants.[9] In April 2026, Mr. Dominguez Fernandez was driven to the Mexican border by ICE—presumably with only the clothes on his back—and asked to cross; begin a new life. (Doc. 27-2 at 3-4). He declined. Relying on this declination, the Government now suggests Dominguez Fernandez's continued detention is justified—"Petitioner himself thwarted his own removal." (Doc. 26 at 7). But the Court disagrees. A lawful exercise of free will cannot be recast as a failure to cooperate with removal. *Cf.*, 28 U.S.C. § 1231(a)(1)(C) (the removal period

[8] Much to the contrary, the Government all but admits that Mexico has not accepted Dominguez Fernandez. (Doc. 26 at 8) ("If Petitioner is now willing to go to Mexico, albeit in an 'orderly' fashion, then the Government will remove him to Mexico. *If Mexico refuses to accept him*, then the Government will work to identify another third country.") (emphasis added).

[9] Hearing Transcript at 14, *Barnes Tase v. ICE*, No. 26-cv-246-SDD-EWD (M.D. La. July 8, 2026), ECF No. 46 ("[Judge]: And do you concede, as your colleague [did]. . . that Mexico requires consent from the deportee in order to accept them? [Respondent]: That's correct.").

may be extended where a noncitizen "acts to prevent the alien's removal subject to an order of removal").

"An effort to compel an individual to voluntarily depart by walking across an international border to a country of which he is not a citizen is not a removal effort." *Mendoza Martin v. Parra*, 2026 WL 2318024, at *6 (S.D. Fla. Aug. 11, 2026). This is especially true where, as in this case, "there is no evidence . . . of some *legitimate* removal effort (e.g., travel document procurement, communication with Mexico, or otherwise) that [Dominguez Fernandez] actually interfered with." *Id.* (emphasis added); *see also Prado v. Warden, Cal. City Immigration Processing Center*, No. 26-4738, 2026 WL 2262335, at *2 (E.D. Cal. Aug. 5, 2026) ("The Government cannot use indefinite detention to manufacture noncitizens' consent to removal to a third country. To adopt the Government's position on the use of detention to strong-arm third-country removal to Mexico would not only undermine the consent required for those removals but also sanction the use of detention to coerce otherwise unavailable removals."); *Rodriguez-Ramos v. Warden, Baker Cnty. Det. Ctr.*, No. 26-658, 2026 WL 1091016, at *3 (M.D. Fla. Apr. 22, 2026) (granting habeas relief, even though "ICE claims Petitioner 'resisted removal' to Mexico"); *Valdes-Oviedo v. Immigration & Customs Enforcement Field Off. Dir.*, No. 25-2720, 2026 WL 353266, at *3 (W.D. Wash. Feb. 9, 2026) ("Apart from this single sentence of ICE's 'belief' about Mexico, the Government presents no other evidence that removal to Mexico is possible, much less foreseeable. Indeed, courts in this District have found that Mexico has been unwilling to accept noncitizens who, like Petitioner, are unwilling to go."); *Boza-Rosales v. Blanche*, -- F. Supp. 3d --, 2026 WL 1412456, at *3 (W.D. Wash. May 15, 2026) ("[I]f petitioner's removal to Mexico, El Salvador, or another country other than Cuba was lawful, then respondents would not need petitioner to 'accept' or consent to such

removal. Respondents may not rely on petitioner's refusal to go along with their improper efforts to remove him to a third country as a basis for denying him habeas relief.”).

The Government concedes failure on its removal attempt to Mexico. However, it still insists Mr. Dominguez Fernandez’s deportation is reasonably foreseeable because “the Government will work to identify another third country.” (Doc. 26 at 8). But the Supreme Court explicitly disavowed this rationale for detention in *Zadvydas v. Davis*, 533 U.S. 678, 696 (2001).

What’s more, a “noncitizen must be given sufficient notice of a [third] country of deportation” and “a reasonable opportunity to raise and pursue his claim for withholding of deportation” in reopened removal proceedings before an immigration judge. *Rodriguez Romero v. Ladwig*, No. 25-cv-1106, 2026 WL 1146824, at *13 (M.D. La. Apr. 21, 2026); *see also Vazquez v. Bondi*, No. 26-577, 2026 WL 752455, at *2 (W.D. Tex. Mar. 11, 2026) (“While Respondents provide[d] . . . Petitioner notice about removal to Mexico, Respondents make no mention they provided any process to adjudicate any fear-based claim. . . . Before removal to a third country can be effectuated, the due process clause requires that a noncitizen be afforded the opportunity to raise claims before a neutral adjudicator.”). This process takes time, has yet to occur, and need not occur in detention.[10]

As of this writing, Mr. Dominguez Fernandez has been detained for nearly a year and counting; there appears to be no end in sight. Therefore, Dominguez Fernandez’s current detention exceeds the six-month presumptively reasonable period that the Supreme Court recognized in *Zadvydas* and *Clark v. Martinez*, 543 U.S. 371, 386 (2005) (explaining that mere passage of time may suffice as reason for release when “Government ha[s] brought forward nothing to indicate

[10] Hearing Transcript at 50:14-16, *Rodriguez Romero v. Ladwig*, No. 25-cv-1106-JWD-EWD (M.D. La. Aug. 5, 2026), ECF No. 105 (Petitioner’s Counsel: “You don’t have to be detained to file a motion to reopen, do you?” ICE Officer Liggins: “You don’t have to.”)

that a substantial likelihood of removal subsists”). This is not to mention the length of his two prior ICE detentions—totaling 6 months.[11] *See Rodriguez Romero v. Ladwig*, 827 F. Supp. 3d 779, 803 (M.D. La. 2026) (“Petitioners’ current periods of detention combine with their previous detentions for the purposes of *Zadvydas*”) (collecting cases).

Each day that Mr. Dominguez Fernandez remains indefinitely detained, his constitutional right to liberty is severely restrained. *See Zadvydas*, 533 U.S. at 690 (2001) (“Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects.” (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992))). And that harm is irreparable. *See Martinez v. Trump*, No. CV 25-1445, 2025 WL 3124847, at *3 (W.D. La. Oct. 22, 2025) (“The erroneous deprivation of a [noncitizen]’s liberty, ‘for even minimal periods of time, unquestionably constitutes irreparable injury.’” (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976))). Therefore, he is entitled to habeas relief.

### C. Conclusion

For the reasons provided by the Court in this Ruling and Order, the Court **ORDERS** that the Petition for Writ of Habeas Corpus (Doc. 1) filed by Petitioner, Felipe Dominguez Fernandez, is **GRANTED**.

Given the deterioration of his health and recent hospitalization, the Court **ORDERS** Respondents to **RELEASE** Dominguez Fernandez from their custody within **24 hours** of this Order, and under the conditions of his **previously revoked OSUP** and **Notice of Release**, both of which are dated July 12, 2019. (Doc. 25-1 at 184-86, 189). This will include the condition that he only be required to surrender to ICE once a travel document is obtained. (Doc. 25-1 at 189).

[11] Dominguez Fernandez was previously detained for 4 months in 2009, 3 of which occurred after his February 2009 Removal Order (Doc. 25-1 at 230; Doc. 25-2 at 159) (detained January 14, 2009 to May 17, 2009). And ICE later detained him for an additional 3 months in 2019. (Doc. 25-1 at 184, 209) (detained April 15, 2019 to July 12, 2019).

The Court **ORDERS** that Dominguez Fernandez not be re-detained absent a demonstrable **change in circumstances** and in compliance with ICE's own **regulations** and the Due Process Clause of the **Fifth Amendment** to the United States Constitution. Dominguez Fernandez has the right to an **orderly departure** outside of custody, the time allotted for which must be reasonable depending on the circumstances.[12]

The Court **ORDERS** that Respondents and their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them are **PROHIBITED** from removing Petitioner to a country other than Cuba without notice and a meaningful opportunity to be heard in re-opened removal proceedings with a hearing before an immigration judge. Respondents will **not re-detain** Dominguez Fernandez for purposes of reopening removal proceedings to effectuate removal to a third country.

Signed in Baton Rouge, Louisiana, on August 27, 2026.

*Shelly D. Dick*

**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

[12] This Court has previously held that the Due Process Clause entitles a noncitizen, previously released on supervision, to an orderly departure outside of ICE custody. *See Omar v. U.S. Immigration and Customs Enforcement*, No. 26-cv-443-BAJ, 2026 WL 1663009, at *12-13 (M.D. La. May 29, 2026); Judgment at 2, *Tase v. Jordan*, No. 26-cv-246-SDD-EWD (M.D. La. July 9, 2026), ECF No. 42. The right to an orderly departure is especially warranted here, given Dominguez Fernandez's medical conditions and the length of time he has been in this Country.